FILED
CLERK

3:09 pm, Jun 17, 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

RELIANCE FIRST CAPITAL, LLC,

      Plaintiff,

        -v-

MID AMERICAN MORTGAGE, INC.,

      Defendant.
-----------------------------------------------------X

Case No. 18-cv-3528 (SFJ)(ARL)
**Memorandum and Order**

FEUERSTEIN, S., Senior District Judge:

I.     Introduction

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure,
Defendant Mid America Mortgage, Inc. ("Defendant" or "Mid America") moves to dismiss the
First Amended Compliant ("FAC") of Plaintiff Reliance First Capital, LLC ("Plaintiff" or
"Reliance"), which alleges, *inter alia*, trademark infringement by Defendant. (*See* ECF No. 35
(hereafter, the "Dismissal Motion" or "Motion"); *see also* ECF No. 23 (FAC).) Plaintiff opposes
the Motion. (*See* ECF No. 36-13 (hereafter, "Opp'n"). For the following reasons, the Dismissal
Motion is granted.

II.    Background

A motion to dismiss pursuant to Rule 12(b)(2) of the Federal rules of Civil Procedure is
"inherently a matter requiring the resolution of factual issues outside of the pleadings." *St. Paul
Fire and Marine Ins. Co. v. Eliahu Inc. Co.*, No. 96-cv-7269, 1997 WL 357989, at *1 (S.D.N.Y.
June 26, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1997) (citations omitted); *see also MedPay Systems,
Inc. v. MedPay USA, LLP*, No. 06-cv-1054, 2007 WL 1100796, at *1 (E.D.N.Y. Mar. 29,
2007)(same). "[T]herefore 'all pertinent documentation submitted by the parties may be

considered in deciding the motion.'" *Redhawk Hldgs. Corp. v. Craig Invs., LLC*, No. 15-cv-9127, 2016 WL 6143355, *3 (S.D.N.Y. Oct. 19, 2016) (quoting *Eliahu Ins.*, 1997 WL 357989, at *1). Hence, the following facts are drawn from the FAC and the affidavits[1] and documentary exhibits submitted by Plaintiff and Defendant. *See MedPay*, 2007 WL 1100796, at *1.

### A. By the Plaintiff

#### 1. Factual Allegations in the FAC

"Plaintiff is a Delaware limited liability company with its principal place of business and headquarters located [in] Melville, New York." (FAC, ¶1.) For approximately ten years, and operating in thirty-five states, it has "provide[d] real estate home mortgage loans and related services ("Mortgage Services"). (*Id.*, ¶6.) In 2008, Plaintiff acquired all rights in and to the "CLICK AND CLOSE" mark (hereafter, the "CAC Mark" or "Mark") and its associated proprietary software tool (hereafter, "Software"), which had been coined and developed, respectively, years earlier. (*See id.*, ¶8.) Both Plaintiff and the entity from which it acquired the Mark, have used the CAC Mark "to identify and distinguish its [M]ortgage [S]ervices from those of competitors." (*Id.*)

"Plaintiff provides its services to residential borrowers, to third-party loan purchases, and to third-party loan securitizers." (*Id.*, ¶9.) It "originates loans and then sells them . . . to banks and other financial institutions or institutional investors, who buy the loans and service them."

---

[1] Plaintiff submitted the affirmation of its counsel, Eugene R. Licker, Esq., who stated that his affirmation was submitted on his "personal knowledge, except where noted otherwise." (ECF No. 36 ("Licker Aff."), ¶1.) Defendant submitted the declarations of Jeffrey E. Bode, President of Defendant (*see* ECF No. 35-2 ("Bode Decl."); and ECF No. 37-3 ("Bode Supp. Decl.")), Jennifer Arnold, Manager of Business Systems for Defendant (*see* ECF No. 35-3 ("Arnold Decl.")); and John A. Thomas, an attorney for Defendant (*see* ECF No. 35-12 ("Thomas Decl.")), who all stated that their declarations were "based upon [their] own personal knowledge". (ECF Nos. 35-2, ¶1; 35-3, ¶1; 35-12, ¶1; and 37-3, ¶1.)

(*Id.*, ¶15.) While "Plaintiff sells all of the loans it originates, it retains servicing rights on a growing number of its loan originations." (*Id.*, ¶17.) In selling its loans, Plaintiff has relied upon its CAC Mark and its Software to entice purchasers to buy those loans and use Plaintiff's Mortgage Services. (*See id.*, ¶¶15-18, 21.) Plaintiff alleges that the CAC Mark "is recognized within the industry, and mortgage professionals publically [*sic*] refer to the CLICK AND CLOSE™ Mark in touting the high quality of Plaintiff's services." (*Id.*, ¶ 22; *see also id.*, ¶24 ("As a result of Plaintiff's longstanding use of the CLICK AND CLOSE™ Mark, such mark has come to be associated with Plaintiff as a designator of Plaintiff's high-quality [M]ortgage [S]ervices."). Plaintiff alleges the CAC Mark is strong. (*See id.*, ¶35.)

As to Defendant, Plaintiff alleges, *inter alia*, it is a direct competitor, using mortgage loan originators to conduct its competing mortgage services offerings, and providing mortgage services to consumers. (*See id.*, ¶¶25-27.) Plaintiff further alleges, upon information and belief, *inter alia,* that: "Defendant was aware of Plaintiff's CLICK AND CLOSE™ Mark," yet "began using the mark CLICK N' CLOSE in association with [its] mortgage services" (*id.*, ¶29), "sometime in November of 2017" (*id.*, ¶33), after having applied to register that mark with the U.S. Patent and Trademark Office on June 23, 2017 (*see id.*, 30); Defendant "licenses the mark CLICK N' CLOSE or co-brands the mark CLICK N' CLOSE with third parties (whether by sponsor agreements of otherwise);" and, "Defendant and/or third parties promote Defendant's mortgage services throughout the United States, including in the state of New York." (*Id.*, ¶ 34.) However, "Plaintiff's common law use rights create senior-in-time priority over the Defendant's earliest rights . . . ." (*Id.*, ¶40.) Yet, "Defendant is using and attempting to register an identical mark for identical services offered to the same class of customers," (*id.*, ¶ 35), which "will likely cause, or is causing, confusion, mistake, and deception to consumers as to the affiliation,

connection, or association of Defendant to Plaintiff or as to Plaintiff's approval of the services provided by Defendant." (*Id.*, ¶ 36.)

2. <u>Affirmations by Attorney Licker</u>

Searching the New York State Unified Court System's website, Plaintiff's counsel "found eight foreclosure actions commenced by Mid America in New York courts." (Licker Aff., ¶2.) In conjunction with those actions "are assignments of the mortgages, which Defendant recorded in New York." (*Id.*)

In a November 3, 2017 press release, official partnership agreements between "Click n' Close™, a division of Mid America Mortgage, Inc.," NASCAR,[2] and the Richard Petty Motorsports race team, were announced. (*See id.*, ¶3 and referenced Ex. C, *attached to* Licker Aff. (hereafter, the "Press Release").) The Press Release explained, *inter alia*, that "Click n' Close is Mid America Mortgage's new digital mortgage approval and closing platform that provides home buyers with a fast, simple and secure experience by automating many of the steps of a traditional mortgage process." (Press Release at 1.) It further stated that "[a]s part of the agreement with Richard Petty Motorsports, the Click n' Close brand will be featured as a primary sponsor of the No. 43 car driven by Darrell 'Bubba' Wallace[,] Jr. for at least three races, making its debut at the 2018 Daytona 500. The No 43 Click n' Close car will also make appearances at Phoenix Raceway and Texas Motor Speedway." (Press Release at 2.) Another race series in which the No. 43 Click n' Close car participated in August 2018 was held in Watkins Glen, New York; Click n' Close used social media to promote the race. (*See id.*, ¶4,

---

[2] "NASCAR" is the acronym for the "National Association of Stock Car Auto Racing, Inc.," "the sanctioning body for the No. 1 form of motorsports in the United States." (Press Release at 2.)

and referenced Ex. F (Twitter screen shots), *attached to* Licker Aff.; *see also id.*, ¶5 and

referenced Ex. G (providing statistics of television viewership of race series).)

   *B. Defendant's Factual Declarations*

   Mid America is an Ohio corporation with its principal place of business in Addison,

Texas.  (Bode Decl., ¶2.)  Continuously operating in one form or another since 1941, Defendant

changed its name to "Mid America Mortgage, Inc." in 2011.  (*See id.*)  Mid America "is licensed

to originate residential mortgages in 46 states, plus the District of Columbia.  However, New

York is not one of those states."  (*Id.*, ¶3.)

> Mid America is not licensed to originate residential
> mortgage loans in New York.  Mid America has never originated a
> New York residential mortgage loan.  Mid America also: (1) does
> not have an office or address in New York; (2) does not own or
> lease any real or tangible personal property in New York; (3)
> maintains no bank accounts in New York; (4) *does not actively
> market its services in New York*; (5) has no referral sources, such
> as realtors, builders, or mortgage brokers that refer us business
> from New York; (6) other than its New York counsel dealing with
> this lawsuit, *has no agents or employees in New York*; (7) has not
> paid taxes in New York[;] and (8) does not have any subsidiaries
> that undertake any such activities in New York.

(*Id.*, ¶4 (emphasis added).)  Defendant has had some sporadic contacts with New York,

including, at the time this action was brought, Defendant "held servicing rights on 95 loans in

which the collateral was in the State of New York [(hereafter, the "New York Loans")]," but

they:

   (1.)  "make up only 0.3% of Mid America's current loan portfolio" (*id.*, ¶5.b);

   (2.)  "were not originated by Mid America," having been "acquired post-origination as

   parts of much larger, multi-state loan packages," and as to which Defendant could not

   segregate out the New York [L]oans, and did not "make any filings in New York to

   perfect the real property liens related to those loans."  (*See id.* (further stating that "[n]one

of the loans in th[o]se packages were loans [that] were applied for through [Defendant]'s "Click N' Close" platform"));

(3.) are serviced by LoanCare, LLC, a Virginia loan servicing company headquartered in Virginia, with which Defendant has contracted as it "is not licensed to service residential mortgage loans in New York" (*id.*, ¶5.c); "LoanCare performs servicing for numerous other owners of real estate mortgages" and "does not use [Defendant]'s 'Click n' Close' marks when servicing the New York [L]oans owned by [Defendant]." (*Id.*)

"Mid America has no plan to begin originating residential mortgage loans in New York" as they do not fit well with Defendant's business model. (*Id.*, ¶8.) However, because it wanted "to service the handful of New York post-origination loans [it] had acquired over the years," Defendant "sought a passive Mortgage Loan Servicer Exemption" (hereafter, "Exemption") from New York State, which required Defendant to obtain "a generic certificate of authority to do business in New York (although it has done no such business), and established a New York registered agent on April 11, 2016." (*Id.*, ¶6.) When the State discontinued the Exemption, Defendant "applied for a New York Mortgage Banking license" (hereafter, "License") which would allow Defendant "to buy and service mortgage post-origination loans" in New York. (*Id.*, ¶7.) Defendant applied for the License because it "is the only way that it can service the handful of New York [L]oans it does own, given that the [Exemption] has been discontinued." (*Id.*, ¶8.) "The . . . [L]icense has not yet been granted." (*Id.*, ¶7.)

"'Click n' Close' (the "[Defendant's] <u>Mark</u>") is the name of [Defendant's] total eMortgage process," that allows Mid America to "accept an electronic application from a prospective residential mortgage borrower, take the borrower through the application process online, and then close the loan electronically." (*Id.*, ¶9 (emphasis in original).) Thus, it is a

business-to-consumer model, selling its services directly to personal-use customers, and "not a loan origination system . . . used in a Business to Business . . . context," to which a mortgage borrower would never have access.  (*Id.*, ¶10.)  Contrary to Plaintiff's allegation, Mid America does not license the Defendant's Mark or use of its eMortgage process to third parties.  (*See id.*)

While its "'Click n' Close' platform is accessible to anyone in the world with an internet connection, [Defendant] has not made any attempt to target the New York market, solicit business from New York customers, or project [Defendant]'s mortgage loan origination services into the New York market."  (*Id.*, ¶11.)  Further, Defendant promotes use of its "Click n' Close" process exclusively to prospective mortgage borrowers.  (*See id.*)  Since its launch of "Click n' Close", Mid America has "had a single inquiry from New York that involved submission of information through the platform."  (*Id.*, ¶12.)  However, it was "not a bona fide application, and did not result in a loan origination."  (*Id.*)

### C.  Procedural Background

On June 15, 2018, Plaintiff commenced this action alleging, *inter alia*, the unauthorized use and exploitation of its trademark by Defendant in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*  (*See* ECF No. 1 (Complaint), at 1.)  In response, on August 20, 2018, Defendant moved on two grounds to dismiss Plaintiff's Complaint:  pursuant to Rule 12(b)(2) for lack of personal jurisdiction, arguing Plaintiff could not meet the requirements of the New York's relevant jurisdiction rules; and pursuant to Rule 12(b)(6) for failure to state a claim under the Lanham Act, arguing Plaintiff failed to plead a valid mark in use in commerce and there was no risk of confusion.  (*See* ECF No. 12-18 (Mem. in Supp. of First Mot. to Dismiss).)  However, thereafter, the parties stipulated that Defendant would withdraw its First Motion to Dismiss upon Plaintiff filing an amended complaint (*see* ECF No. 20), which was "SO ORDERED" on

September 8, 2018.[3]  (*See* Case Docket, Sept. 8, 2018 Electronic Order (ADS).)  Plaintiff filed its

FAC on September 12, 2018.  (*See* ECF No. 23), which Defendant moved to dismiss on

December 7, 2018 on the same bases it originally argued in its initial dismissal motion.  (*See*

ECF No. 35.)  Plaintiff opposed the Dismissal Motion.  (*See* ECF No. 36.)  In addition to other

materials, both parties submitted affidavits, with documentary exhibits attached, in support of

their positions.

### C.  The Parties' Positions

#### 1.  The Defendant

Defendant argues that, despite a second chance to do so, Plaintiff "still fails to plead that

Mid America has sufficient contacts with . . . [New York] State to render it subject to being

haled into court here."  (Dismissal Motion at 1.)  Indeed, "[t]he sole basis for personal

jurisdiction remains the conclusory assertion that Mid America has 'commercial business

activities and contacts within this jurisdiction,' [but, P]laintiff still alleges no facts even

tangentially supporting this conclusion."  (*Id.* at 1, 2.)  Since there are no well-pleaded facts

showing that Defendant entered New York in a meaningful and material way, Plaintiff has not

established that this Court has general jurisdiction, pursuant to N.Y. C.P.L.R.[4] § 301, over

Defendant.  (*See id.* at 3-6.)  Similarly, Plaintiff cannot establish this Court's jurisdiction over

Defendant pursuant to CPLR § 302(a)(1) since Defendant does not do business in New York and

"Plaintiff's causes of action do not arise out of even the tangential contacts Mid America has

with this State."  (*Id.* at 7.)  Further, Plaintiff cannot rely on CPLR § 302(a)(2) to establish the

---

[3]  This case was originally assigned to the Honorable Arthur D. Spatt.  On October 3, 2018,
Judge Spatt recused himself from the case, whereupon it was reassigned to the undersigned.  (*See*
ECF No. 26 ("Case reassigned to Judge Sandra J. Feuerstein for all further proceedings.").)
[4]  For convenience and hereafter, "N.Y. C.P.L.R." will be referred to as "CPLR".

Court's jurisdiction over Defendant because Defendant is not physically present in New York, and to the extent "Plaintiff . . . vaguely allege[s], 'on information and belief,' that Mid America 'co-brands' its Mark with unidentified 'third parties' who allegedly promote Mid America's mortgage services in New York, there are no *facts* supporting that conclusory statement." (*Id.* at 8 (emphasis in original).) Nor can personal jurisdiction be imposed under CPLR § 302(a)(3) since: it was not foreseeable that the alleged infringement would cause harm in New York, and Plaintiff has not alleged a factual basis for Defendant's alleged prior knowledge of Plaintiff's claimed "substantial and consistent use" of its supposed mark (*see id.* at 10 and note 2); "Plaintiff's own allegations negate the possibility of a legally recognizable [*sic*] injury in New York or anywhere else because the facts alleged refute a 'likelihood of confusion'" (*id.* at 10 (citing *id.* at Section II(A)("Plaintiff fails to state a claim under the Lanham Act because it fails to plead a valid mark in use in commerce, and there is no risk of confusion.")); *see also id.* at 10 ("Plaintiff's Software is an internal, back-office, proprietary tool used by Plaintiff's employees and known (if at all) only to mortgage industry insiders" (citing FAC, ¶¶ 15-19, 21, 22)); and, the only way Defendant's "'Click n' Close' process might have a tangential impact in New York is via the internet, but "creating a website that 'may be felt nationwide—or even worldwide—but, without more, . . . is not an act purposefully directed toward the forum state.'" (*Id.* at 12 (quoting *Bensusan Rest. Corp. v. King*, 937 F. Supp 295, 301 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997)).) Finally, Defendant argues that the exercise of personal jurisdiction over it would not comport with due process. (*See id.* at 12-13.)

2. The Plaintiff

Plaintiff contends that, post-*Daimler*,[5] this Court has general jurisdiction over the

Defendant since it "has done far more in New York than simply register as a foreign corporation

doing business in New York." (Opp'n at 8.) The "far more" Plaintiff purports Defendant has

done to "purposely avail itself of the privilege of doing New York business" is Defendant's:

seeking licensure as a mortgage lender; subsequently seeking the Exemption; allegedly servicing

the New York Loans without licensure to do so; and commencing state court foreclosure actions

in New York. (*Id.; see also id.* at 8-10.) Plaintiff further relies on Defendant's website, which it

claims to be interactive with New York residents since "New York residents are directed how to

make their payments on their Mid America loans and given the name of Defendant's agent, and

its address." (*Id.* at 10-11.) Hence, Plaintiff posits that "[b]y its conduct, [Defendant] has

consented to jurisdiction in New York and has made itself at home here." (*Id.* at 11.) Further, in

support of its specific jurisdiction argument, Plaintiff asserts, *inter alia*:

> Defendant's New York business includes (a) displaying its
> offending mark at the NASCAR race in Watkins Glen, NY, (b)
> offering for sale over the internet merchandise displaying the
> offending mark, (c) owning and servicing loans in New York, (d)
> seeking licensure as a loan originator, (e) commencing lawsuits in
> New York, and (f) registering to do business in New York.

(*Id.* at 12.) It argues that "[t]hese activities clearly 'relate to' Defendant's trademark

infringement." (*Id.*) More particularly, Plaintiff contends "that licensure acts as a consent to

specific jurisdiction." (*Id.* at 13 (citing *Matter of B&M Kingstone, LLC v. Mega Int'l*

*Commercial Bank Co., Ltd.*, 131 A.D.3d 259, 264-65, 15 N.Y.S.3d 318 (N.Y. App. Div., 1st

Dep't 2015); and, *Gliklad v. Bank Hapoalim*, No. 155195/2014, 2014 WL 3899209 (N.Y. Sup.

Aug. 4, 2014) (both cases discussing New York's common law "separate entity rule" doctrine

---

[5] *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed.2d 624 (2014).

regarding bank branches).) (*Id.* at 12.)  It advances the notion that the mere application for

licensure equates to consenting to New York's specific jurisdiction.  (*See id.* at 14.)  In support

of specific jurisdiction under CPLR § 302(a)(2), Plaintiff baldly states that "Defendant's display

of the offending mark at the race in Watkins Glen, NY and on merchandise offered for sale in

New York constitutes the commission of a tort here, establishing jurisdiction over Defendant

here."  (*Id.* at 14.)  Moreover, Plaintiff contends there is specific jurisdiction pursuant to CPLR §

302(a)(3)(ii)[6] based upon Defendant's displaying "its offending mark throughout the country—at

races in many states, on the internet, and in other market—[which is] clearly committing torts

outside of the state."  (*Id.*)  Therefore, "[i]t is reasonable to assume that Defendant, which is a

nationwide lender, derives substantial income from interstate commerce."  (*Id.* at 15.)  Finally,

Plaintiff posits that "the due process tests of 'minimum contacts' and 'reasonableness' are more

than satisfied" based upon: Defendant's multiple acts of purposeful availment; "to the extent that

purposeful availment constitutes consent to jurisdiction, that consent *per se* satisfies due

process"; and by virtue of satisfying New York's more restrictive long-arm statute, federal due

process is satisfied.  (*Id.* at 15.)

---

[6]  Plaintiff has not addressed Defendant's contention that CPLR § 302(a)(3)(i) is not at issue
here.  (*See* Dismissal Motion at 8 ("[W]e are concerned only with § 302(a)(3)(ii) because Mid
America has not taken any steps to solicit business in New York.").)  Plaintiff is, therefore,
deemed to have waived any claim of specific jurisdiction pursuant to § 302(a)(3)(i).  *See, e.g.,
Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)("[I]n the case of a counseled party, a
court may, when appropriate, infer from a party's partial opposition that relevant claims or
defenses that are not defended have been abandoned."); *see also, generally, e.g., Patacca v. CSC
Hldgs, LLC*, No. 16-cv-679, 2019 WL 1676001, at *13 (E.D.N.Y. Apr. 17, 2019) (same).

III.    Discussion

*A.  Personal Jurisdiction and Rule 12(b)(2)*

"A plaintiff bears the burden of demonstrating personal jurisdiction over the person or entity being sued." *Audiovox Corp. v. S. China Enter., Inc.*, No. 11-cv-5142, 2012 WL 3061518, at *2 (E.D.N.Y. July 26, 2012)(citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  "Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)(quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)); *see also MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  Hence, a court may consider evidence outside of the pleadings in resolving a Rule 12(b)(2) motion.  *See Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, No. 11-cv-5875, 2013 WL 80181, at *4 (E.D.N.Y. Jan. 2, 2013) (collecting cases).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid,* 702 F.3d at 727 (quoting *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).  Relatedly, "[w]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)(further citation omitted).  However, "where a defendant has contested a plaintiff's allegations with 'highly specific, testimonial evidence regarding a fact essential to jurisdiction and plaintiffs do not counter that evidence, the allegation may be deemed refuted.'"  *MedPay*, 2007 WL 1100796, at *4 (quoting *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98-cv-9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002);

further citations omitted).  Yet, "'[i]n considering whether the plaintiff[] ha[s] met [its] burden, [a court] will not draw argumentative inferences in the plaintiff's favor . . . , nor . . . accept as true legal conclusion couched as a factual allegation.'"  *Japan Press*, 2013 WL 80181, at *4 (quoting *Licci ex rel. Lucci v. Lebanes Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)("*Licci I*"), *certified question answered by Licci v. Lebanes Canadian Bank*, 984 N.E.2d 893, 2012 WL 5844997 (N.Y. Nov. 20, 2012)("*Licci II*"))(brackets added; ellipses in *Japan Press*).

> To determine whether it has personal jurisdiction over Defendant, the Court must engage in a two-step inquiry.  First, because "this is a federal question case where [the] defendant resides outside the forum state and the relevant federal statute does not specifically provide for national service of process," the Court applies "the forum state's personal jurisdiction rules."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013)(alterations omitted); *see Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  The Court thus looks to New York law.  Second, the Court considers "whether an exercise of jurisdiction under th[is] law[] is consistent with federal due process requirements."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)."  * * *

*DH Servs., LLC v. Positive Impact, Inc.*, No. 12-cv-6153, 2014 WL 496875, at *2 (S.D.N.Y. Feb. 5, 2014); *see also Whitaker*, 261 F.3d at 208 (same).

### B.  New York Jurisdictional Law

> At the onset, the Court must draw a distinction between "general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). A court has general jurisdiction over a defendant when the defendant's "continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *Id.* (alteration omitted).  Specific jurisdiction, on the other hand, rests on the premise that "the commission of some single or occasional acts of the corporate agent in a state may sometimes be enough to subject the corporation to jurisdiction in

> the State's tribunals with respect to suits relating to that in-state
> activity." *Id.*

*DH Services, LLC v. Positive Impact, Inc.*, No. 12-cv-6153, 2014 WL 496875, *3 (S.D.N.Y. Feb. 5, 2014).

Here, Reliance alleges, "The Court has personal jurisdiction over the Defendant based on its commercial business activities and contacts within this jurisdiction." (FAC, ¶4.)

### 1. General Jurisdiction Pursuant to CPLR § 301

General jurisdiction "permits a court to exercise its power in a case where the subject matter of the suit is unrelated to [a defendant's general business] contacts." *Japan Press*, 2013 WL 80181, at *3 (quoting *Licci I*, 673 F.3d at 58 n.8; citing *Chloe*, 616 F.3d at 164). In *Daimler AG v. Bauman*, while holding that "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction," 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014) (quotations and citation omitted), the Supreme Court also reiterated that general jurisdiction can be premised upon a corporation's contacts with the forum state if those contacts are "so 'continuous and systemic' as to render [the corporation] essentially at home in the forum State." *Id.* at 749; *see also Goodyear Dunlop Tires. Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2854 (2011).

New York's general jurisdiction statute, CPLR § 301, "confers jurisdiction where a company 'has engaged in such a continuous and systemic course of "doing business" in New York that a finding of its 'presence' in New York is warranted.'" *Sonera Hldg. B.V. v. Cukurova Holding A.S.*, 750 F.3d 22 1, 224 (2d Cir. 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739 (1990) (internal citations and alterations omitted); *see also Nasso v. Seagal*, 263 F. Supp.2d 596, 611 (E.D.N.Y. 2003)("Section 301

codifies the common law principle that a non-domiciliary is deemed to be 'present' in the state if the non-domiciliary is 'doing business' in the state when the action is commenced."). "The 'doing business' standard is a stringent one because a corporation which is amendable to the Court's general jurisdiction 'may be sued in New York on causes of action wholly unrelated to acts done in New York.'" *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp.2d 722, 731 (S.D.N.Y. 2001)(quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990)); *see also Sonera Hldg.*, 750 F.3d at 225. "Occasional or casual business in New York does not suffice under section 301." *Ball*, 902 F.2d at 198.

Here, Plaintiff has failed to plead facts supporting a *prima facie* case of general jurisdiction, pursuant to CPLR § 301, over Defendant. There are no factual allegations of the indicia courts consider in determining whether a defendant is doing business within New York to support the exercise of § 301 jurisdiction. *See Japan Press*, 2013 WL 80181, at *6 (listing traditional indicia of a corporation's presence in New York for purposes of establishing general jurisdiction); *MedPay*, 2007 WL 1100796, at *5 (same). Indeed, Defendant specifically states otherwise, *i.e.*, Mid America neither owns property nor maintains an office in New York, it does not have any bank accounts in New York; it has no New York employees or agents; it does not actively market its services in New York; and it has no referral sources from New York. (*See* Bode Decl., ¶4.)

To the extent Plaintiff seeks to establish continuous and substantial New York operations by Mid America based upon its servicing of the New York Loans, that effort is unavailing. The FAC is void of any allegations that Mid America serviced the New York Loans. Yet, even if alleged, Defendant has specifically refuted such a position, emphatically stating it contracts with a Virginia company, LoanCare, which is not Mid America's agent, to service the New York

15

Loans.  (*See id.*, ¶5.c; *see also* Reply at 2 ("Mid America does not perform [servicing] functions with respect to its New York [L]oans.").)

Nor is Mid America's ownership of the New York Loans sufficient to support general jurisdiction in this instance.  Those Loans comprise a minuscule fraction of Mid America's loan portfolio and were acquired, post-origination, as parts of much larger, multi-state loan packages and could not be segregated out by Defendant.  (*See* Bode Decl., ¶5.b.)  *See also, e.g., Insight Data Corp. v. First Bank Sys., Inc.*, No. 97-cv-4896, 1998 WL 146689, at *5 (S.D.N.Y. Mar. 25, 1998)(finding the ownership of mortgages secured by New York properties, which comprised approximately .068% of the defendant's mortgage portfolio, together with its maintenance of a bank account, to be insignificant contact with New York for jurisdictional purposes).  Moreover, as discussed, the New York Loans are serviced by an out-of-state contractor, *i.e.*, LoanCare.  To the extent foreclosure actions were commenced against eight of those Loans, it appears some were commenced by LoanCare in the name of Mid America, identified as the note holder.  (*See, e.g.*, Licker Aff., Ex B., Swift Action, Compl. at "Seventh" Allegation; and Marando Action, Compl, at "Seventh" Allegation.)  In any event and in this instance, such foreclosure actions are incidental to Defendant's loan ownership and not "'so continuous and systemic as to render [it] essentially at home'" in New York thereby warranting this Court exercising general jurisdiction over Defendant.  *Daimler*, 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919; brackets in *Daimler*); *see also, e.g., Insight Data*, 1998 WL 146689, at *5 (finding that holding title to three New York properties "as a result of foreclosures is more a matter of fortuity than proof" defendant "engaged in such a continuous and systematic course of 'doing business'" to warrant the exercise of personal jurisdiction over defendant).

2.  <u>Specific Jurisdiction Pursuant to CPLR § 302</u>

"Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Chloe*, 616 F.3d at 164 (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984)). Specific jurisdiction "'depends on an "affiliation between the forum and the underlying controversy," principally activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Licci I*, 673 F.3d at 59 n.8 (quoting *Goodyear Dunlop*, 564 U.S. at 919). "Such jurisdiction is 'confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear Dunlop*, 564 U.S. at 919).

(a.)  *Section 302(a)(1)*

"The jurisdictional inquiry under CPLR [§] 302(a)(1) necessarily requires examination of the particular facts in each case." *Licci II*, 20 N.Y.3d at 338. Generally, Plaintiff argues that this Court should find specific jurisdiction over Mid America because of Mid America's pending License application. (*See* Opp'n at 13-14.) However, there are no factual allegations in the FAC alluding to this contention. Moreover, unless and until issued, Mid America's application is nothing more than an outstanding request for permission to engage in a future act or acts; merely requesting permission to engage in purposeful activities in New York is not engaging in such activities and cannot give rise to jurisdiction under § 302(a)(1). Hence, the pending nature of the License application is too attenuated a basis upon which to establish the purposeful activities required for finding § 302 jurisdiction. *See DH Services,* 2014 WL 496875, at *3 (citations omitted). Plaintiff's reliance on New York state banking licensure cases in support of §302 jurisdiction does not alter this finding as those cases are inapposite, involving entities that were

already licensed to purposefully engage in activities in the state.  (*See* Opp'n at 13 (citing *B&M Kingstone*, 131 A.D.3d 259 (discussing New York's common law "separate entity rule" doctrine regarding bank branches); *Gliklad*, 2014 WL 3899209 (same); and *Vera v. Republic of Cuba*, 91 F. Supp.3d 561, 570 (foreign bank had registered with N.Y.S. Dep't of Fin. Servs. and obtained license)).)

In any event, "in determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York, and, if so, (2) whether this cause of action arises from such a business transaction." *Licci I*, 673 F.3d at 60 (quotations, alterations, and citations omitted); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006); *Japan Press*, 2013 WL 80181, at *7.  A more particular discussion of the dual-pronged §302(a)(1) inquiry follows.

### i. The "Transacts Business" Inquiry

"[A] defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1) . . . as long as he engages in purposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws . . . ." *Chloe*, 616 F.3d at 169 (quotations, alterations and citations omitted); *see also Licci I*, 673 F.3d at 61 ("[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York, . . . thereby invoking the benefits and protections of its laws." (quotations and citations omitted)).  "[S]ection 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship

between the transaction and the claim asserted." *Chloe*, 616 F.3d at 170 (quotations and citation omitted); *see also Deuttsche Bank. Sec., Inc. v. Montana Bd. of Inv.*, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164 (N.Y. 2006). "[I]t is the quality of the defendants' New York contacts that is the primary consideration." *Licci I*, 673 F.3d at 62; *see also Licci II*, 20 N.Y.3d at 338 ("[A]lthough determining what facts constitute 'purposeful availment' is an objective inquiry, it always requires a court to closely examine the defendant's contacts for their quality."). "The mere receipt by a nonresident of benefit or profit from a contract performed by others in New York" is insufficient to confer personal jurisdiction under § 302(a)(1). *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 309 N.Y.S.2d 913 (N.Y. 1970).

The particular facts of this case do not support a finding that § 302(a)(1)'s "transacts business" inquiry has been satisfied. The inclusion of the New York Loans in the multi-state loan packages purchased by Mid America is insufficient to satisfy this inquiry because:

> (1) there are no facts alleged or present in the jurisdictional record that Mid America had any control over their inclusion in the loan-packages; indeed, Mid America attests that it could not segregate out or extract those Loans. *See, e.g., Audiovox Corp.*, 2012 WL 3061518, at *4 ("Contacts with the forum that are 'random,' 'fortuitous,' or 'attenuated,' or that result from the 'unilateral activity of another party or third person' are not sufficient to establish personal jurisdiction." (citations omitted));

> (2) those Loans were acquired post-origination and were neither originated by Mid America nor through the "Click n' Close" platform (*see* Bode Decl., ¶5.b); and

> (3) those Loans are not serviced by Defendant, but by an out-of-state mortgage servicer, that is not Defendant's agent, but a retained contractor. *See Cutco Indus. v. Naughton*,

806 F.2d 361, 366 (2d Cir. 1986)("To be considered an agent for jurisdictional purposes, the alleged agent must have been in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal." (citation omitted)); *see also Insight Data*, 1998 WL 146689, at 6 (citing *Naughton*).

Similarly, Mid America's maintenance of a website which can be accessed by New York citizens does not rise to the level of purposefulness warranting subjecting Mid America to jurisdiction in this State. *See, e.g., MedPay*, 2007 WL 1100796, at *5 ("A firm does not 'do business' in New York simply because New York citizens can contact the firm through its website . . . ." (citations omitted)). In sum, nothing presented to the Court regarding the New York Loans demonstrates that Mid America has purposefully availed itself of the privilege of conducting activities within New York.

### ii. The "Nexus" Inquiry

"[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Licci I*, 673 F.3d at 66 (quotations and citations omitted); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *Licci II*, 20 N.Y.3d at 339 ("[T]he second prong of the jurisdictional inquiry . . . require[s] that, in light of all the circumstances, there [is] an articulable nexus . . . or substantial relationship . . . between the business transaction and the claim asserted." (quotations and citations omitted)). "[C]ausation is not required, and . . . the [nexus] inquiry under [§ 302(a)(1)] is relatively permissive." *Licci II*, 20 N.Y.3d at 339. "CPLR [§] 302(a)(1) does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports

specific jurisdiction under the Statue." *Id.* at 341. However, "[j]urisdiction is not justified under

. . . § 302(a)(1) where the relationship between the claim and transaction is too attenuated, . . .

and a connection that is merely coincidental is insufficient to support jurisdiction." *Lucci I*, 673

F.3d at 66-67 (quotations, alterations and citations omitted); *see also Sole Resort, S.A. de C.V. v.

Allure Resorts Mgmt, LLC*, 450 F.3d 100, 103 (2d Cir. 2006); *Johnson v. Ward*, 4 N.Y.3d 516,

520, 797 N.Y.S.2d 33 (N.Y. 2005).

On the present jurisdiction record, Plaintiff cannot meet the requisite "nexus" component

of the § 302(a)(1) inquiry because it has not shown a substantial relationship between Plaintiff's

claims and actions which occurred in New York. First, as discussed, the New York Loans have

no relationship with Defendant's "Click n' Close" platform; those Loans were not originated by

Mid America and there are no allegations, or even evidence, showing that the "Click n' Close"

platform was employed in their originations or servicing. Second, in the absence of any

allegations or jurisdictional evidence that NASCAR, the Richard Petty Motorsports race team,

Bubba Wallace, or the No. 43 Click n' Close care are agents for Mid America, the NASCAR

sponsorship by "Click n' Close" does not demonstrate a substantial relationship between

Plaintiff's claims and the actions related to that sponsorship. *See, e.g., Insight Data*, 1998 WL

146689, at *6. Similarly, there are no allegations in the FAC and no jurisdictional evidence that

NASCAR's New York presence was for the benefit of Defendants. *See Naughton*, 806 F.2d at

366 (quoted in *Insight Data*). The Court agrees with Mid America that "[t]he NASCAR

sponsorship, like national print or electronic advertising, does not target New York consumers

and will not support personal jurisdiction under Section 302(a)(1)." (Reply at 7 (citing *Davidson*

*Extrusions, Inc. v. Touche Ross & Co.*, 131 A.D.2d 421, 424, 516 N.Y.S.2d 230, 232 (App. Div.

1987)(defendant did not transact business in New York by virtue of its placing an advertisement

in trade journal with nation circulation).)  To the extent Plaintiff relies upon Click n' Close's

Twitter posts to establish a nexus to New York, the Court also finds more persuasive

Defendant's argument that, in this instance, "Twitter (a world-wide, on-line news and social

networking site) posts are akin to advertising on-line or in national publications, and do not

create claim-related contacts with the forum, even if people within the forum state can see them."

(Reply at 7 n.8 (citing *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. GLR16-

2974, 2017 UWL 2778825, at *10 (D. Md. June 26, 2017)(finding defendants' virtual contact via

Twitter with Maryland residents insufficient for Court to exercise specific jurisdiction)).)  Hence,

even assuming, *arguendo*, that Plaintiff was able to satisfy the "transacts business" inquiry of §

302(a)(1), because it is unable to satisfy the "nexus" inquiry, jurisdiction remains wanting under

that subsection.

### (b.)  *Sections 302(a)(2) and (3)*

Section 302(a)(2) confers personal jurisdiction over a non-domiciliary defendant only

"when they commit acts within the state."  *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28

(2d Cir. 1997)(quoting *Feathers v. McLucas*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8 (1965)), and,

thus, "reaches only tortious acts performed by a defendant who was physically present in New

York when he performed the wrongful act."  *Id.; see also Bank Brussels Lambert v. Fiddler

Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999)("[A] defendant's physical presence in

New York is a prerequisite to jurisdiction under Section 302(a)(2).").  "Even if [a plaintiff]

suffered injury in New York, that does not establish a tortious act in the state of New York

within the meaning of Section 302(a)(2)."  *Bensusan Restaurant*, 126 at 29.

Here, Plaintiff's reliance on the "display of the offending marks at the race in Watkins

Glen, NY and on merchandise offered for sale in New York" in support of its § 302(a)(2)

argument fails for several reasons. (Opp'n at 14.) First, there are no allegations that NASCAR, Richard Petty Racing or Bubba Wallace are agents of the Defendant. (*See* FAC, *in toto*.) *See, e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)(interpreting New York law to include an agency-based theory of jurisdiction); *but, cf., Sonera Hldgs.*, 750 F.3d at 225 (recognizing that in *Daimler*, the Supreme Court "expressed doubts as to the usefulness of an agency analysis, like that espoused in *Wiwa*, that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego"); *see also Havlish v. Royal Dutch Shell PLC*, No. 13-cv-7074, 2014 WL 4828654, *3 (S.D.N.Y. Sept. 24, 2014)("Regardless of the impact that the *Daimler* decision has on the agency analysis, [Plaintiff] fail[s] to allege facts to make out a prima facie case under th[e agency] theory."). Moreover, Defendant expressly refutes any agency relationship with those entities. (*See* Bode Supp. Decl., ¶3, *attached as* Ex. B to Reply.) Second, in addition to an absence of any allegations about NASCAR-related merchandising in the FAC, Defendant specifically refutes any involvement with such merchandising. (*See id.*, ¶4 ("Mid America . . . does not control the content or operation of shop.NASCAR.com."); ¶5 ("Mid America does not have any merchandising rights to the Number 43 car/Bubba Wallace merchandise, and receives no revenue from sales on shop.NASCAR.com, or from any other sales of NASCAR-related merchandise."); *see also id.* at ¶6.) Finally, since the Watkins Glen races occurred after this action commenced, *i.e.*, in August 2018 (*see* Licker Aff., ¶4), it cannot form the basis for personal jurisdiction over Mid America. *See, e.g., DH Services,* 2014 WL 496875, at *13-14 (in Lanham Act case and based on events occurring between filing of original and amended complaint, declining to exercise personal jurisdiction pursuant to § 302). Thus, since Plaintiff

has not alleged any tortious act committed by Defendant while it was physically present in New York, § 302(a)(2) does not confer personal jurisdiction over Defendant in this action.

Further, there are no allegations in the FAC or evidence in the jurisdictional record supporting the conclusion that there was an "effort by the [D]efendant to serve the New York market." *Buccellati Hldg. Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp.2d 615, 626 (S.D.N.Y. 2013)(citations omitted). Indeed, to the extent Plaintiff would ask this Court to find such an effort based upon its submission of screen shots from Defendant's corporate website (*see* Ex. K, attached to Licker Aff.), the Court declines that request. The website "is not even the same website that houses Mid America's Click n' Close process." (Reply at 9 n.11 (citing Pachiano Decl., ¶2, *attached as* Ex. C to Reply).) At best that evidence is unpersuasive. (*See id.* at 9 (asserting that Plaintiff's reliance on Mid America's corporate website to "show[] Mid America 'knew that its actions would have an impact within [New York]' is patently false").) Rather, the jurisdictional evidence shows that Mid America did not target New York through its website, its prior NASCAR sponsorship,[7] or by any other means. (*See id.* at 9 ("Mid America has made extensive efforts to *not* serve the New York market." (citing Bode Decl., ¶¶5.c, 6-9)(emphasis in original).) Finally, while it may be "reasonable to assume that Defendant, which is a nationwide lender, derives substantial income from interstate commerce" (Opp'n at 15), there are no allegations regarding Mid America's income, substantial or otherwise, or jurisdictional evidence supporting such an assumption. In sum, Plaintiff has not demonstrated

---

[7] "Mid America's sponsorship agreement with [Richard Petty Racing] / Bubba Wallace will expire on December 31, 2018, and Mid America will not be sponsoring another NASCAR driver in the foreseeable future." (Bode Supp. Decl., ¶7, *attached as* Ex. B to Reply.)

the requisite elements necessary to support a finding of jurisdiction under § 302(a)(3)(ii). *See DH Services*, 2014 WL 496875, at *12 (enumerating elements).

### C. Constitutional Due Process Consideration

If a defendant falls within the reach of New York's long-arm statute, a court must then determine whether its exercise of jurisdiction over the defendant "comports with the Constitution's due process guarantees." *Audiovox Corp.*, 2012 WL 3061518, at *4 (citing *Asahi Metal Indus. Co., Ltd v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 108-09 (1987)). "These guarantees are satisfied when a defendant has certain minimum contacts with the forum state such that maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(internal quotation marks and citation omitted)).

Here, "[a]s Plaintiff has failed to make out a *prima facie* showing of personal jurisdiction under either CPLR § 301 or CPLR § 302[], it is not necessary to determine whether the exercise of jurisdiction comports with federal due process." *MedPay*, 2007 WL 1100796, at *8; *see also Whitaker*, 261 F.3d at 208-09 ("Because we agree with the district court that [plaintiff] failed to establish . . . long arm jurisdiction [under New York law], we do not reach his due process argument."); *DH Services*, 2014 WL 496875, at *2 (declining to consider the federal due process prong of personal jurisdiction analysis when court already concluded jurisdiction was lacking under state law).

* * *

The Court has considered the remainder of Plaintiff's jurisdictional arguments and finds them to be without merit. Further, because the Court finds it has no personal jurisdiction over the Defendant, it lacks jurisdiction to consider Defendant's Rule 12(b)(6) arguments in favor of dismissal. *See MedPay*, 2007 WL 1100796, at *8 (finding it unnecessary to reach merits of defendant's Rule 12(b)(6) arguments because Court concluded it did not have personal jurisdiction over party).

IV.    Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Dismissal Motion is granted; Plaintiff's FAC is dismissed without prejudice. The Clerk of Court is directed to close this case.

SO ORDERED this 17th day of June 2019 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge